Civil Case No. _____

# EXHIBIT A
# TO NOTICE OF REMOVAL

### SCR CIV FORM 1-A
**Notice and Acknowledgment for Service by Mail**
## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### Civil Division

| National Consumers League | |
|---|---|
| | *Plaintiff* |

V.                                    Civil Action Number │0006069-09│

| General Mills, Inc. | |
|---|---|
| | *Defendant* |

### NOTICE

To:    Name │Christopher Chorba, Gibson Dunn & Crutcher│

Address │333 South Grand Avenue│

│Los Angeles, CA 90071-3197│

The enclosed summons, complaint and initial order are served pursuant to Rule 4(c)(4) of the Superior Court Rules of Civil Procedure.

You must sign and date the Acknowledgement. If you are served on behalf of a corporation, unincorporated association (including a partnership), or other entity, you must indicate under your signature your relationship to that entity. If you are served on behalf of another person and you are authorized to receive process, you must indicate under your signature your authority.

If you do not complete and return the form to the sender within twenty (20) days after it has been mailed, you (or the other party on whose behalf you are being served) may be required to pay any expenses incurred in serving a summons, complaint and initial order in any other manner permitted by law.

If you do complete and return this form, you (or the other party on whose behalf you are being served) must answer the complaint within twenty (20) days after you have signed, dated and returned the form. If you fail to do so, judgment by default may be taken against you or the relief demanded in the complaint.

This Notice and Acknowledgment of Receipt of Summons, Complaint and Initial Order was mailed on (insert date) │September 2, 2009│

_____          │September 2, 2009│
*Signature*                                               Date of Signature

### Acknowledgment of Receipt of Summons, Complaint and Initial Order

I received a copy of the summons, complaint and initial order in the above captioned matter at

(address) │_____│

_____          │_____│          │_____│
**Signature**                              Relationship to Defedant/Authority          Date of Signature
                                                 *To Receive Service*

Form CV(6)-1590/Mar 97

 **SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

NATIONAL CONSUMERS LEAGUE
    Vs.                                C.A. No.      2009 CA 006069 B
GENERAL MILLS, INC.

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each Judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Lee F. Satterfield

Case Assigned to: Judge NEAL E KRAVITZ
Date:  August 20, 2009
Initial Conference: 9:30 am, Friday, November 20, 2009
Location:  Courtroom 519
            500 Indiana Avenue N.W.
            WASHINGTON, DC 20001

Caio.doc

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 105, 515 5th Street, N.W. (enter at Police Memorial Plaza entrance). Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Lee F. Satterfield

Caio.doc

CA Form 1

# Superior Court of the District of Columbia
## CIVIL DIVISION
500 Indiana Avenue, N.W., Room JM-170
Washington, D.C. 20001   Telephone: 879-1133

The National Consumers League

*Plaintiff*

VS.

General Mills, Inc.

*Defendant*

Civil Action No. 0006069-09

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government you have 60 days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear **below.** If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue. N.W. between 9:00 am. and 4:00 pm., Mondays through Fridays or between 9:00 am. and 12:00 Noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

*Clerk of the Court*

Karen J. Marcus

Name of Plaintiff's Attorney

Finkelstein Thompson LLP

Address

1050 30th St. NW, Washington, DC 20007

(202) 337-8000

Telephone

By _____

Deputy Clerk

Date August 20, 2009   AUG 19 2009

PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170

Form CV(6)-456/Mar. 93

NOTE: SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.

IMPORTANT: IF YOU FAIL TO SERVE AND FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, DO NOT *FAIL TO ANSWER WITHIN THE REQUIRED TIME*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (628-1 161) or the Neighborhood Legal Services (682-2700) for help or come to Room JM 170 at 500 Indiana Avenue, N.W., for more information concerning where you may ask for such help.

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

|  |  |
|---|---|
| NATIONAL CONSUMERS LEAGUE<br>1701 K Street, #1200, NW,<br>Washington, District of Columbia 20006<br><br>        Plaintiff,<br><br>    v.<br><br>GENERAL MILLS, INC.<br>One General Mills Boulevard<br>Minneapolis, Michigan 55426<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. _0006069-09_

**RECEIVED**
Civil Clerk's Office

AUG 2 0 2009

Superior Court of the
District of Columbia
Washington, D.C.

Plaintiff, the National Consumers League, by its undersigned attorneys, brings this action on behalf of the General Public of the District of Columbia against General Mills Inc., and its wholly owned subsidiaries ("Defendant"), and alleges the following:

### INTRODUCTION

1.    This action is brought by Plaintiff on behalf of the General Public of the District of Columbia pursuant to District of Columbia Code §28-3905(k)(1).  Plaintiff National Consumers League is a non-profit organization located in the District of Columbia.

2.    Defendant sells a variety of cereals under the brand name of Cheerios®.  On September 17, 2008, Plaintiff National Consumers League sent a letter to Andrew von Eschenbach, the Commissioner of Food and Drugs at the United States Food and Drug Administration ("FDA"),  alerting him and the agency to the misleading advertising

1

campaign that General Mills was using to market its Cheerios ® cereal.[1] Plaintiff National

Consumers League's letter ("NCL Letter") to the FDA warned that General Mills made

claims that promised:

> [C]onsumers a health benefit (i.e. lowered blood cholesterol levels) merely by consuming Cheerios® breakfast cereal without accompanying changes in diet or lifestyle. NCL understands that such "magic bullet" health claims are impermissible under the laws that your agency enforces and properly are reserved to cholesterol-lowering medications, like Lipitor and similar statin drugs.
>
> Cheerios® breakfast cereal is one of the (if not the) best selling breakfast cereals nationally. General Mills has the regulatory and creative resources to know and do better in crafting promotional messages. This being the case, we urge [sic] FDA to take exemplary enforcement action relative to this claim so as to safeguard consumer interests.[2]

3.    The NCL Letter prompted the FDA to take action against Defendant General

Mills. In a warning letter to Defendant dated May 5, 2009 ("FDA Letter"),[3] the FDA stated that

it had reviewed the packaging for Cheerios® Toasted Whole Grain Oat Cereal and had found

health claims that violate the Federal Food, Drug, and Cosmetic Act ("FDCA").[4] The FDA told

Defendant that unless the violations were promptly corrected, the agency might pursue

enforcement action, including "seizure of violative products and/or injunction against the

manufacturers and distributors of violative products."[5]

4.    The D.C. Public was harmed by Defendant's misrepresentations.

---

[1] http://www.nclnet.org/news/2009/NCL%20Ltr%20to%20FDA%20re%20Misleading%20Claim%20for%20Cheerios.pdf, as retrieved August 7, 2009. A true and correct copy of the NCL Letter is attached hereto as Exhibit A and incorporated herein by reference.

[2] NCL Letter, p.2.

[3] http://www.fda.gov/foi/warning_letters/s7188c.pdf, as retrieved May 14, 2009. A true and correct copy of the FDA Letter is attached hereto as Exhibit B and incorporated herein by reference.

[4] Codified at 21 U.S.C. §§ 301, et seq., with implementing regulations found at 21 C.F.R. §§ 1.1, et seq.

[5] FDA Letter, p. 4.

## JURISDICTION AND VENUE

5.      Jurisdiction of this Court is founded on D.C. Code § 11-921.  This Complaint

arises under the District of Columbia Consumer Protection Procedures Act, D.C. Code § 28-

3901 *et seq.* and the Court, therefore, has subject matter jurisdiction thereunder.

6.      Venue is proper in this District.  The claims asserted in this complaint arise, in

part, within this District.  Plaintiff resides in this District and seeks to represent residents of this

District who have purchased General Mills' Cheerios® cereal from the Defendant.  Many of

these transactions occurred in retail stores located in this District.  Defendant transacts business

in this District and has caused injury within this District.

7.      As a result of the facts alleged in this Complaint, this Court has personal

jurisdiction over the Defendant.  The Defendant sells and markets its products to stores and

consumers in the District of Columbia.  The Defendant has transacted business and advertised in

the District of Columbia; caused tortious injury in the District of Columbia via acts or omissions

occurring therein; and derived substantial revenue from products sold in the District of

Columbia.

## PARTIES

8.      Plaintiff, National Consumers League, is a private, nonprofit, 501(c)(3)

organization located in the District of Columbia at 1701 K Street, #1200, NW, Washington,

District of Columbia 20006.  The National Consumers League is a private, nonprofit advocacy

group representing consumers on marketplace and workplace issues.  Plaintiff National

Consumers League is the nation's oldest consumer organization.  Plaintiff National Consumers

League has not purchased General Mills' Cheerios® cereal, but brings this action as a private

attorney general on behalf of the General Public of the District of Columbia pursuant to District of Columbia Code § 28-3905(k)(1).

9.      Defendant is a corporation organized and existing under the laws of Delaware, with a principal place of business at One General Mills Boulevard, Minneapolis, Minnesota 55426.  For purposes of diversity jurisdiction, Defendant can be considered a citizen of either Delaware or Minnesota.  Defendant lists with the Delaware Secretary of State a registered agent for service of process by the name of National Registered Agents, Inc., located at 160 Greentree Drive, Suite 101, Dover, Delaware 19904.  Defendant conducts business in this jurisdiction and in this judicial district by means of its website and advertising campaign, and through distributors and retailers that deliver and sell Cheerios® to consumers.

10.      Plaintiff alleges on information and belief that at all times relevant herein, Defendant and its employees, subsidiaries, affiliates, and other related entities were the agents, servants and employees of each other, and at all times relevant herein, each was acting within the purpose and scope of that agency and employment.  Plaintiff further alleges on information and belief that at all times relevant herein, the distributors and retailers who deliver and sell the Products on behalf of Defendant also were Defendant's agents, servants and employees, and at all times herein, each was acting within the purpose and scope of that agency and employment.

11.      Whenever reference in this Complaint is made to any act or transaction of Defendant, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents, and/or representatives of Defendant committed, knew of, performed, authorized, ratified and/or directed that act or transaction on behalf of Defendant while actively engaged in the scope of their duties.

## THE INTERESTS OF THE GENERAL PUBLIC

12.     Defendant General Mills marketed its Cheerios® to District of Columbia residents with false representations that the cereal has drug-quality properties that would reduce total and "bad" cholesterol levels when eaten.

13.     Upon information and belief, Defendant has caused damage to the General Public of the District of Columbia.

14.     Plaintiff acts for the benefit of the General Public as a Private Attorney General pursuant to District of Columbia Code §28-3905(k)(1).

## FACTUAL BACKGROUND

15.     Defendant began selling its breakfast cereal, Cheerios®, in 1941. Cheerios come in a number of varieties. The price of Cheerios® ranges from approximately $3 to $5 a box.

16.     As set forth above, the FDA was prompted by a letter from Plaintiff to send Defendant a warning letter, dated May 5, 2009, asserting violations of the FDCA arising from Defendant's Cheerios® packaging, including, but not limited to, improper claims regarding the reduction of cholesterol levels:

... Specifically, your Cheerios® product bears the following claims on its label:

- "you can Lower Your Cholesterol 4% in 6 weeks"

- "Did you know that in just 6 weeks Cheerios can reduce bad cholesterol by an average of 4 percent? Cheerios is ... clinically proven to lower cholesterol. A clinical study showed that eating two 11/2 cup servings daily of Cheerios cereal reduced bad cholesterol when eaten as part of a diet low in saturated fat and cholesterol."

5

These claims indicate that Cheerios® is intended for use in lowering cholesterol, and therefore in preventing, mitigating, and treating the disease hypercholesterolemia.  Additionally, the claims indicate that Cheerios® is intended for use in the treatment, mitigation, and prevention of coronary heart disease through lowering total and "bad" (LDL) cholesterol.[6]

17.    Defendant's packaging of its original Cheerios® cereal makes similar claims.

18.    The Principal Display Panel ("PDP") on the packaging of the original Cheerios® features a fanciful depiction of a heart, sized approximately one-third of the PDP's total height.  Within the heart, the packaging states, "10% in one month!" and "see back for details".  The "10%" is in a typeface similar in size to that used on the PDP for the product name.  Just below the product name, the packaging states in slightly smaller typeface, "helps lower cholesterol."  The packaging states on the lower left-hand portion of the PDP that, "Three grams of soluble fiber daily from whole grain oat foods, like Cheerios cereal, in a diet low in saturated fat and cholesterol, may reduce the risk of heart disease.  Cheerios cereal provides 1 gram per serving."

19.    The back panel of the original Cheerios® packaging features in large typeface the word "WOW!" followed by the question, "I can help lower my cholesterol 10% in one month?" In smaller typeface below, it states that:

> A new study proves Cheerios® cereal plus a reduced calorie diet that is low in fat can help lower bad cholesterol about 10% in one month.  The foods you eat or don't eat, along with your lifestyle habits, can really make a difference in lowering your cholesterol.  Just follow these daily steps for one month to help lower your cholesterol.

---

[6] FDA Letter, pp. 1-2.

Below that, "bulleted" by depictions of the cereal, are the statements: "Eat two 1 1/2 cup servings of Cheerios cereal" and "Cut 500 calories from your diet." A smaller copy of the heart is depicted on the back panel with "10% in one month!" printed within.

20.     Defendants' CEO, Ken Powell, said during a March 18, 2009 conference call that Defendant's cereal sales rose 13 percent in the third quarter ending February 2009, helped by the marketing of Cheerios health benefits. "Cheerios, which is the largest franchise in the category, is also one of the fastest-growing brands in the category," Powell said during the call. "So that's a great story."[7]

21.     However, the FDA contends that at least some of Defendant's health benefit claims violate the FDCA. In its letter, the agency said the referenced claims exceed those permitted for products that have not obtained FDA approval for marketing as a drug:

> Because of these intended uses, the product is a drug within the meaning of section 201(g)(1)(B) of the Act [21 U.S.C. § 321 (g)P)(B)]. The product is also a new drug under section 201(p) of the Act [21 U.S.C. § 321(p)] because it is not generally recognized as safe and effective for use in preventing or treating hypercholesterolemia or coronary heart disease. Therefore, under section 505(a) of the Act [21 U.S.C. § 355(a)], it may not be legally marketed with the above claims in the United States without an approved new drug application.[8]

22.     Referencing an FDA-issued regulation that authorizes packaging claims that associate the soluble fiber found in whole grain oats with a reduced risk of coronary heart disease,[9] the FDA stated that while the subject PDP contains an authorized claim, the cited references to cholesterol reduction are not made as part of the authorized claim:

> The cholesterol claim that mentions the clinical study is on the back of the Cheerios® box, completely separate from the health claim on the front

---

[7] http://www.bloomberg.com/apps/news?pid=20601087&sid=akLaZ4Zwx6g0&refer= home, as retrieved May 15, 2009.

[8] FDA Letter, p. 2.

[9] 21 CFR 101.81, *see* 21 CFR 101.81(d)(2),-(3).

label. Although the other cholesterol claim is on the same panel as the authorized health claim, its prominent placement on a banner in the center of the front label, together with its much larger font size, different background, and other text effects, clearly distinguish it from the health claim in the lower left corner.[10]

23. Even if the cholesterol claims were part of the authorized claims, the FDA said they would not qualify for inclusion with the authorized claim because the cholesterol-lowering claims state a specific reduction in risk: "you can Lower Your Cholesterol 4% in 6 weeks."[11]

24. The original Cheerios® packaging, as noted above, also makes a specific risk-reduction claim: "10% in one month!"

25. The FDA Letter, which also addressed claims made on Defendant's website, stated that it was not intended as "an all-inclusive review of your products and their labeling. It is your responsibility to ensure that all of your products are in compliance with the Act and its implementing regulations."[12]

26. Stephen Sundlof, director of the FDA's Center for Food Safety and Applied Nutrition, discussed the FDA Letter in a recent interview. "We certainly don't have any issues with the safety of Cheerios," he said. "We just believe that the labeling on this particular product has gone beyond what the science supports."[13]

27. The packaging claims on the Products represent that the Products have unique, drug-quality properties that would reduce total and "bad" cholesterol levels when eaten. However, the Products' properties in this respect are not unique, and as the FDA said,

---

[10] FDA Letter, p. 2.

[11] FDA Letter, p. 1.

[12] FDA Letter, p.4.

[13] http://www.bloomberg.com/apps/news?pid=20601087&sid=akLaZ4Zwx6g0&refer=home, as retrieved May 15, 2009.

Cheerios® "is not generally recognized as safe and effective for use in preventing or treating hypercholesterolemia or coronary heart disease."[14]

28.     The Cheerios® packaging was not approved by nor screened by the FDA. The FDA does not regulate the advertising and packaging for cereal food products. However, the FDA does oversee an approval process for new "drugs" before they may enter the marketplace. As such, the FDA warned General Mills that they would have to submit Cheerios® to the drug regulatory approval process if the company continued to represent its product as having "drug-like" qualities.

29.     As a direct result of Defendant's claims that Cheerios® possessed a "drug-like" property in reducing consumers' cholesterol, members of the General Public of the District of Columbia were misled by Defendant's packaging claims and purchased a product that was not unique or drug-equivalent in its cholesterol-lowering properties. Consequently, the General Public of the District of Columbia has been harmed

30.     Defendant knew, or should have known, that its statements misrepresented the clinical studies and that Cheerios® did not have the purported affect on children's attentiveness.

31.     Defendant's deceptive advertising had a material effect on purchasers of General Mills' Cheerios®. As a result of Defendant's deceptive advertising, as set forth herein, members of the General Public of the District of Columbia have been damaged.

## COUNT I
### (Violation of the District of Columbia Consumer Protection Procedures Act)

32.     This Count is brought pursuant to the District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code § 28-3901 *et seq.* This Count is alleged against the

---

[14] FDA Letter, p.2.

Defendant on behalf of the General Public of the District of Columbia pursuant to District of Columbia Code § 28-3905(k)(1).

33.     D.C. Code § 28-3904 makes it an "unlawful trade practice … whether or not any consumer is in fact misled, deceived or damaged thereby," to, among other things:

     (a)    represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have;

     (d)    represent that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another;

     (e)    misrepresent as to a material fact which has a tendency to mislead;

     (f)    fail to state a material fact if such failure tends to mislead;

     (u)    represent that the subject of a transaction has been supplied in accordance with a previous representation when it has not;

34.     In marketing its Cheerios®, General Mills violated the above provisions of the District of Columbia Consumer Procedures Protection Act by, *inter alia*, falsely misrepresenting that the cereal has drug-quality properties that would reduce total and "bad" cholesterol levels when eaten.

35.     Plaintiff, on behalf of the General Public of the District of Columbia, hereby seeks statutory damages in the amount of $1,500 per violation pursuant to D.C. Code § 28-3905(k)(1). Plaintiff and the General Public of the District of Columbia further seek reasonable attorneys' fees and costs plus interest.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against the Defendant, and in favor of Plaintiff and the D.C. Public, and grant the following relief:

10

a)  declaring that Defendant's conduct is in violation of the D.C. Consumer Protection

    Procedures Act;

b)  enjoining Defendant's conduct found to be in violation of the D.C. Consumer

    Protection Procedures Act;

c)  granting Plaintiff and the General Public of the District of Columbia treble damages or

    statutory damages in the amount of $1,500 per violation, whichever is greater;

d)  granting Plaintiff its costs of prosecuting this action, including attorneys' fees, experts'

    fees and costs together with interest; and

e)  granting such other relief as this Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED: August 20, 2009                **FINKELSTEIN THOMPSON LLP**


_____
Donald J. Enright (#463007)
Karen J. Marcus  (# 486435)
The Duvall Foundry
1050 30th Street, NW
Washington, DC  20007
(202) 337-8000
(202) 337-8090 fax
denright@finkelsteinthompson.com
kmarcus@finkelsteinthompson.com


*Counsel for Plaintiff National Consumers League*

11

# EXHIBIT A



# NATIONAL CONSUMERS LEAGUE

1701 K Street, NW, Suite 1200, Washington, DC 20006
PHONE (202) 835-3323  FAX (202) 835-0747 www.nclnet.org

Sally Greenberg
*Executive Director*

**Board of Directors**

Jane King
*Chair*

Theodore R. Dehne, Jr.
*Vice Chair*

Pastor Herrera, Jr.
*Vice Chair*

Michael D. Erikson
*Treasurer*

Pamela Hagan
*Secretary*

Jack Blum
*Counsel*

Linda F. Golodner
*President Emeritus*

Esther Shapiro
*Honorary Chair*

Erma Angevine
*Honorary President*

Harry Kranz
*Honorary Member*

Debra Berlyn
Dolores Langford Bridgette
Tom Butt
Larry Cohen
Jim Conran
Bernadine Ennocklson
Glenn English
Mary Finger
Anna Flores
Dorothy Garrick
Steve Hauman
Robert Harris
Dan Hebert
Mary Heslin
Esther Lopez
Lakshmi Mahouta
Fred Douglas Mason, Jr.
Robert N. Mayer
Larry Mitchell
Irene Orozco
Cal Rapson
Pedro Rodriguez
Patricia Royer
Bob Russo
Samuel A. Simon
Jenifer Simpson
Cleo Manuel Stamatus
Scott Stopf
Susan Washington
Frances West
Seth Woods
Jing Jian Xiao

September 17, 2008

Andrew C. von Eschenbach, M.D.
Commissioner of Food and Drugs (HF-1)
Food and Drug Administration
Room 14-71 Parklawn Building
5600 Fishers Lane
Rockville, Maryland 20857-1706

Re: Misleading Claim for Cheerios® Breakfast Cereal

Dear Dr. von Eschenbach:

The National Consumers League (NCL) is a private, nonprofit advocacy group representing consumers on marketplace and workplace issues. NCL is the nation's oldest consumer organization. The League provides government, businesses, and other organizations with the consumer's perspective on various concerns, including promotional claims for food. NCL's mission is to protect and promote social and economic justice for consumers and workers in the United States and abroad. NCL has often filed complaints with the Food and Drug Administration on misleading claims, specifically, on the use of the words "healthy" and "natural" on food products and dietary supplements. We also called attention to a manufacturers' misuse of "low fat" and "fresh."

As you likely recall, in the autumn of 1984, the Kellogg Company began a campaign to promote its All-Bran cereal as a way to reduce the risk of cancer. This promotional campaign sparked legislative and regulatory initiatives that culminated in the Nutrition Labeling and Education Act and implementing regulations from the FDA. NCL worked closely with other consumer, health, and nutrition organizations to help draft and assure passage of the NLEA. These laws were intended to put an end to drug-like claims about the benefits of food, including breakfast cereals, and they provide clear standards for food industry adherence in creating scientifically supported and properly expressed claims. Especially against this backdrop, NCL is extremely dismayed to find -- almost a quarter century later -- that the cereal aisle offers a product from a prominent manufacturer, General Mills, -- bearing a drug-like claim.

General Mills on the front panel of its Cheerios® breakfast cereal label (attached) boldly entices consumers to "Join the Challenge and Lower Your Cholesterol 4% in 6 weeks." The back panel similarly claims, "You Could Lower Your Cholesterol 4% in 6 weeks," and directs consumers to "Sign Up Today at CheeriosChallenge.com" (where reinforcing claims also are made). While we do not contest the validity of the claim that soluble fiber from oats can help reduce cholesterol, we are concerned that the manner in which General Mills communicates to consumers is misleading.

General Mills' claim promises consumers a health benefit (i.e., lowered blood cholesterol levels) merely by consuming Cheerios® breakfast cereal without accompanying changes in diet or lifestyle. NCL understands that such "magic bullet" health claims are impermissible under the laws that your agency enforces and properly are reserved to cholesterol-lowering medications, like Lipitor and similar statin drugs.

Cheerios® breakfast cereal is one of the (if not the) best selling breakfast cereals nationally. General Mills has the regulatory and creative resources to know and do better in crafting promotional messages. This being the case, we urge FDA to take exemplary enforcement action relative to this claim so as to safeguard consumer interests.

Respectfully submitted,

Sally Greenberg
Executive Director

cc: Stephen F. Sundlof, D.V.M., Ph.D.
    Director
    Center for Food Safety and Applied Nutrition

# EXHIBIT B

 **U.S. Food and Drug Administration** 

 **Department of Health and Human Services**

Public Health Service
Food and Drug Administration
Minneapolis District Office
Central Region
250 Marquette Avenue, Suite 600
Minneapolis, MN 55401
Telephone: (612) 758-7114
FAX: (612) 3344142

May 5,2009

**WARNING LETTER**

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

Refer to MIN 09 -18

Ken Powell
Chairman of the Board and CEO
General Mills
One General Mills Boulevard
Minneapolis, Minnesota 55426

Dear Mr. Powell:

The Food and Drug Administration (FDA) has reviewed the label and labeling of your Cheerios® Toasted Whole Grain Oat Cereal. FDA's review found serious violations of the Federal Food, Drug, and Cosmetic Act (the Act) and the applicable regulations in Title 21, Code of Federal Regulations (21 CFR). You can find copies of the Act and these regulations through links in FDA's home page at http://www.fda.gov./

**Unapproved New Drug**

Based on claims made on your product's label, we have determined that your Cheerios® Toasted Whole Grain Oat Cereal is promoted for conditions that cause it to be a drug because the product is intended for use in the prevention, mitigation, and treatment of disease. Specifically, your Cheerios® product bears the following claims ort its label:

- "you can Lower Your Cholesterol 4% in 6 weeks" "
- "Did you know that in just 6 weeks Cheerios can reduce bad cholesterol by an average of 4 percent? Cheerios is ... clinically proven to lower cholesterol. A clinical study showed that eating two 1 1/2 cup servings daily of Cheerios cereal reduced bad cholesterol when eaten as part of a diet low in saturated fat and cholesterol."

These claims indicate that Cheerios® is intended for use in lowering cholesterol, and therefore in preventing, mitigating, and treating the disease hypercholesterolemia. Additionally, the claims indicate that Cheerios® is intended for use in the treatment, mitigation, and prevention of coronary heart disease through, lowering total and "bad" (LDL) cholesterol. Elevated levels of total and LDL cholesterol are a risk factor for coronary heart disease and can be a sign of coronary heart disease. Because of these intended uses, the product is a drug within the meaning of section 201(g)(1)(B) of the Act [21 U.S.C. § 321 (g)P)(B)]. The product is also a new drug under section 201(p) of the Act [21 U.S.C. § 321(p)] because it is not generally recognized as safe and effective for use in preventing or treating hypercholesterolemia or coronary heart disease. Therefore,under section 505(a) of the Act [21 U.S.C. § 355(a)], it may not be legally marketed with the above claims in the United States without an approved new drug application.

FDA has issued a regulation authorizing a health claim associating soluble fiber from whole grain oats with a reduced risk of coronary heart disease (21 CFR 101.81). Like FDA's other regulations authorizing health claims about a food substance and reduced risk of coronary heart disease, this regulation provides for the claim to include an optional statement, *as part of* the health claim, that the substance reduces the risk of coronary heart disease through the intermediate link of lowering blood total and LDL cholesterol. See 21 CFR 101.81(d)(2),-(3). Although the lower left corner of the Cheerios® front label contains a soluble fiber/coronary heart disease health claim authorized under 21 CFR 101.81, the two claims about lowering cholesterol are not made as part of that claim but rather are presented as separate, stand-alone claims through their location on the package and other label design features. The cholesterol claim that mentions the clinical study is on the back of the Cheerios® box, completely separate from the health claim on the front label. Although the other cholesterol claim is on the same panel as the authorized health claim, its prominent placement on a banner in the center of the front label, together with its much larger font size, different background, and other text effects, clearly distinguish it from the health claim in the lower left corner.

Additionally, even if the cholesterol-lowering claims were part of an otherwise permissible claim, under 21 CFR 101.81, the resulting claim language still would not qualify for the use of the soluble fiber health claim. To use the soluble fiber health claim, a product must comply with the claim specific requirements in 21 CFR 101.81, including the requirement that the claim not attribute any degree of risk reduction for coronary heart disease to diets that include foods eligible to bear the claim. See 21 CFR 101.81(c)(2)(E). However, the label of your Cheerios® cereal claims a degree of risk reduction for coronary heart disease by stating that Cheerios® can lower cholesterol by four percent in six weeks. High blood total and LDL cholesterol levels are a surrogate endpoint for coronary heart disease; therefore, the cholesterol-lowering claims on the Cheerios® label attribute a degree of risk reduction for coronary heart disease because if total and LDL cholesterol levels decline, the risk of coronary heart disease declines as well.

**Misbranded Food:**

Your Cheerios ® product is misbranded within the meaning of section 403(r)(1)(B) of the Act [21 U.S.C. § 343(r)(1)(B)] because it bears unauthorized health claims in its labeling. We have determined that your website www.wholegrainnation.com is labeling for your Cheerios® product under section 201(m) of the Act [21 U.S.C. § 321 (m)] because the website address appears on the product label. This website bears the following unauthorized health claims:

- "Heart-healthy diets rich in whole grain foods, can reduce the risk of heart disease."

This health claim misbrands your product because it has not been authorized either by regulation [see section 343(r)(3)(A)-(B) of the Act [21 U.S.C. § 343(r)(3)(A)(B)]] or under authority of the health claim notificati6n provision of the Act [see section'343(r)(3)(C) of the Act [21 U.S.C. § 343(r)(3)(G)]]. Although FDA has issued a regulation authorizing a health claim associating fiber-containing grain products with a reduced risk of coronary heart disease (21 CFR 101.77), the claim on your website does not meet the requirements for this claim. For example, under section 101.77(c)(2), the claim must state that diets low in saturated fat and cholesterol and high in fiber-containing fruit, vegetable, and grain products may reduce the risk of heart disease. The claim on your website leaves out any reference to fruits and vegetables, to fiber content, and to keeping the levels of saturated fat and cholesterol in the diet low. Therefore, your claim does not convey that all these factors together help to reduce the risk of heart disease and does not enable the public to understand the significance of the claim in the context of the total daily diet (see section 343(r)(3)(B)(iii) of the Act [21 U.S.C.§ 343(r)(3)(B)(iiiI].

In addition to the health claim authorized by regulation in 21 CFR 101.77, other health claims linking the consumption of whole grain foods to a reduced risk of heart disease have been authorized through the notification procedure in section 403(r)(3)(C) of the Act. Of those authorized claims, the ones closest to the claim on your website states: "Diets rich in whole grain foods and other plant foods, and low in saturated fat and cholesterol, may help reduce the risk of heart disease.1" Although the claim on your website also concerns whole grains and reduced risk of heart disease, it is different from the authorized claim in significant ways. To meet the requirements of the authorized claim, the claim must state that diets that are (1) rich in Whole grains and other plant foods, and (2) low in saturated fat and cholesterol will help reduce the risk of heart disease) Instead, the claim on your website only states that diets rich in whole grains can reduce the risk of heart disease, with no mention of other plant foods or of low saturated fat and cholesterol.

- "Including whole grain as part of a healthy diet may ... [h]elp reduce the risk of certain types of cancers. Regular consumption of whole grains as part of, a low-fat diet reduces the risk for some cancers, especially cancers of the stomach and colon."

This health claim misbrands your product because it has not been authorized either by regulation [see section 343(r)(3)(A)-(B) of the Act [21 U.S.C. § 343(r)(3)(A)(B)]] or under authority of the health claim notification provision of the Act [see section 343(r)(3)(C) of the Act [21 U.S.C. § 343(r)(3)(C)]]. Although FDA has issued a regulation authorizing a health claim associating fiber-containing grain products with a reduced risk of cancer (21 CFR 101.76), the claim on your website does not meet the requirements for the authorized claim.For example, under section 101.76(c)(2) the claim must state that diets high in fiber-containing grain products, fruits, and vegetables may reduce the risk of some cancers. The claim on your website leaves out any reference to fruits, vegetables, and fiber content. Therefore, your claim does not convey that all these factors together help to reduce the risk of heart disease and does not enable the public to understand the significance of the claim in the context of the total daily diet [see section 343(r)(3)(B)(iii) of the Act [21 U.S.C. § 343(r)(3)(B)(iii)]].

in addition to the health claim authorized by regulation in 21 CFR 101.76, a health claim linking the consumption of whole grain foods to a reduced risk of certain cancers has been authorized through the notification procedure in section 403(r)(3)(C) of the Act. The authorized claim is: "Diets rich in whole grain foods and other plant foods ... may help reduce the risk of... certain cancers."2 Although the claim on your website also concerns whole grains and reduced risk of some cancers, it is different from the authorized claim in significant ways. For example, the authorized claim states that diets rich in whole grain foods and "other plant foods" may help reduce the risk for certain cancers. However,the claim on your website does not mention "other plant foods." Also, by using the language "especially cancers of the stomach and colon" the claim on your website emphasizes the relationship between whole grain foods and stomach and colon cancers as compared to other cancers, suggesting a greater degree of risk reduction or stronger evidence for the relationship between whole grain foods and risk of those two cancers. The claim authorized through the notification procedure does not emphasize the relationship between whole grain foods and stomach and colon cancer as compared to other cancers.

This letter is not intended to be an all-inclusive review of your products and their labeling. It is your responsibility to ensure that all of your products are in compliance with the Act and its implementing regulations.

Failure to promptly correct the violations specified above may result in enforcement action without further notice. Enforcement action may include seizure of violative products and/or injunction against the manufacturers and distributors of violative products.

Please advise this office in writing 15 days from your receipt of this letter of the specific steps you have taken to correct the violations noted above and to ensure that similar violations do not occur. Your response should include any documentation necessary to show that correction has been achieved. If you cannot complete all corrections before you respond, state the reason for the delay and the date by which you will complete the corrections.

Please send your reply to the attention of Tyra S. Wisecup, Compliance Officer, at the address in the letterhead. If you have any questions regarding this letter, please contact Ms. Wisecup at (612) 758-7114.

Sincerely,

/s/

W. Charles Becoat
Director
Minneapolis District

TSW/cd

1 See "Health Claim Notification for Whole Grain Foods with Moderate Fat Content," December 9, 2003 (http://www.cfsan.fda.gov/~dms/f1grain2.html).

2 See "Health Claim Notification for Whole Grain Foods," July 1999 (http://www.cfsan.fda.gov/-dms/flgrain2.html).

---