UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL CONSUMERS LEAGUE,

Plaintiff,

v.

GENERAL MILLS, INC.,

Defendant.

Civil Action 09-01881  (HHK)

MEMORANDUM OPINION

National Consumers League ("NCL") sued General Mills in the Superior Court for the

District of Columbia under the District of Columbia Consumer Protection Procedures Act

("CPPA"), D.C. Code §§ 28-3091, *et seq*.  After General Mills removed the action to this court,

NCL filed this Emergency Motion to Remand [#16].  Upon consideration of the motion, the

opposition thereto, and the arguments of counsel at a hearing, the Court concludes that NCL's

motion should be granted.

I.  BACKGROUND

NCL brings this suit under the "private attorney general" provision of the CPPA, which

provides that "[a] person, whether acting for the interests of itself, its members, or the general

public may bring an action under this chapter in the Superior Court of the District of Columbia

seeking relief from the use by any person of a trade practice in violation of the law of the District

of Columbia . . ."  D.C. Code § 28-3095(k)(1).  NCL's complaint alleges that General Mills

violated the CPPA "by, *inter alia*, falsely misrepresenting that [Cheerios] has drug-quality

properties that would reduce total and 'bad' cholesterol levels when eaten."  Compl. ¶ 34.  NCL

seeks declaratory and injunctive relief, the greater of "treble damages or statutory damages in the amount of $1,500 per violation," and attorneys' fees, experts' fees, and costs.  Compl. Prayer for Relief.

General Mills' Notice of Removal contends that NCL's suit is removable either as a class action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), or pursuant to this Court's diversity jurisdiction.  NCL's Motion for Remand disputes the Court's subject matter jurisdiction and additionally argues that NCL does not have Article III standing.  NCL's position has merit.

## II.  ANALYSIS

### A.      NCL Does Not Have Article III Standing.

NCL expressly disclaims Article III standing, maintaining that it has suffered no injury in fact.  General Mills acknowledges that NCL did not sustain injury by purchasing Cheerios, but argues that NCL has organizational standing to bring this suit in federal court because "defendant's alleged actions have led the organization 'to devote significant resources to identify and counteract the defendant's' [sic] allegedly unlawful 'practices.'"  General Mills' Opp'n to NCL's Mot. Remand at 3 (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)).  General Mills' argument is unconvincing.

"Organizations have standing in their own right if they establish that the organization has suffered an injury-in-fact, i.e., a 'concrete and demonstrable injury to the organization's activities.'"  *Center for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 793 F.2d 1322, 1329 n.41 (D.C. Cir. 1986) (quoting *Havens*, 455 U.S. at 379); *see Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1433 (D.C. Cir. 1995) (holding that organizational standing is proper

where the challenged conduct has directly harmed an organization's ability to provide services). A plaintiff does not have standing, however, if the alleged violation merely sets back the organization's abstract social interests or frustrates its objectives. *See Nat'l Taxpayers Union*, 68 F.3d at 1433 (holding that frustration of an organizations' objectives "is the type of abstract concern that does not impart standing.").

The D.C. Circuit has rejected the suggestion that "the time and money that plaintiffs spend in bringing suit against a defendant would itself constitute a sufficient 'injury in fact,'" finding that to be "a circular position that would effectively abolish the requirement altogether." *Fair Employment Council v. BMC Mktg. Corp.*, 28 F.3d 1268, 1277 (D.C. Cir. 1994); *see also Abigail Alliance for Better Access to Dev. Drugs v. Von Eschenbach*, 469 F.3d 129, 133 (D.C. Cir. 2006) ("[A]n organization is not injured by expending resources to challenge the regulation itself; we do not recognize such self-inflicted harm."); *Equal Rights Center v. Post Properties, Inc.*, — F.Supp.2d —, 2009 WL 3088801, at *4 (D.D.C. Sept. 28, 2009) ("[O]rganizational plaintiffs cannot establish injury that is fairly traceable to defendants' conduct merely by deciding to devote resources to identify and counteract misinformation. . . . Indeed, were an association able to gain standing merely by choosing to fight a policy that is contrary to its mission, the courthouse door would be open to all associations.") (internal quotations and alteration omitted).

General Mills contends that the D.C. Circuit has found organizational standing on facts similar to those presented here. General Mills points to *Action Alliance of Senior Citizens v. Heckler*, 789 F.2d 931 (D.C. Cir. 1986), and specifically, the Circuit's holding that plaintiffs had organizational standing where the organization "devote[d] themselves to the service of senior

citizens and rest[ed] their claims on programmatic concerns, not on wholly speculative or purely

ideological interests." 789 F.2d at 937. In that case, plaintiffs alleged that "the challenged

regulations deny the AASC organizations access to information and avenues of redress they wish

to use in their routine information-dispensing, counseling, and referral activities" such that the

organizations "alleged inhibition of their daily operations, an injury both concrete and specific to

the work in which they are engaged." *Id*. at 937-38. The Circuit found the organizations had

standing because they "adequately alleged a direct, adverse impact on [their] activities by reason

of the agency decisions reflected in the HHS-specific regulations." *Id*. at 937.

General Mills also relies on *Abigail Alliance* v. *Von Eschenbach*, 469 F.3d at 133, to argue

that the "'direct conflict' . . . between General Mills's [sic] alleged conduct and NCL's

organizational mission and activities " is sufficient to confer organizational standing. General

Mills' Opp'n at 6 (quoting *Abigail Alliance*, 469 F.3d at 133). In *Abigail Alliance*, the Circuit

upheld standing where the plaintiff alleged that "unduly burdensome requirements that the FDA

impose[d] on experimental treatments" "frustrated [its] efforts to assist its members and the

public in accessing potentially life-saving drugs and its other activities, including counseling,

referral, advocacy, and educational services." 469 F.3d at 132-33.

In contrast to the claims in *Action Alliance* and *Abigail Alliance*, NCL's claim rests on

alleged harm to the general public, not to itself. NCL does not allege that General Mills' conduct

has had any impact — much less a direct, adverse impact — on its activities as an organization.

Nor does NCL claim that due to General Mills' labeling it has diverted resources and time from

fighting other bad actors or to educating the public to counteract the misinformation. Rather,

NCL has merely chosen to devote its resources to challenge General Mills' conduct by filing this

suit, much like the "self-inflicted harm" of challenging a regulation.  *Abigail Alliance*, 469 F.3d at

133.  Challenging conduct like General Mills' alleged mislabeling is the very purpose of consumer

advocacy organizations.  As such, General Mills' alleged conduct does not hamper NCL's

advocacy effort; if anything it gives NCL an opportunity to carry out its mission.

Because NCL does not claim that General Mills' conduct harmed NCL or inhibited its

activities, NCL does not have Article III standing to bring suit in this Court.  *See Center For*

*Science in the Public Interest v. Burger King Corp.*, 534 F. Supp. 2d 141, 143-144 (D.D.C. 2008)

(holding that where plaintiff organization "does not allege any personal or economic injury

suffered by itself or its members . . . [s]uch generalized grievances are insufficient to establish

constitutional standing for claims brought under DCCPPA.").

**B.      Even If NCL Had Article III Standing, The Court Does Not Have Subject Matter
         Jurisdiction.**

Even if the Court were to find that NCL has Article III standing, remand is proper because

the Court does not have subject matter jurisdiction.  General Mills argues that the case is

removable to this Court under CAFA, or alternatively, pursuant to the Court's diversity

jurisdiction.  The Court is not persuaded.

**1.      NCL's CPPA Suit Is Not A Class Action Under CAFA.**

"Subject to certain limitations, the CAFA confers federal diversity jurisdiction over class

actions where the aggregate amount in controversy exceeds $5 million."  *Exxon Mobil Corp. v.*

*Allapattah Servs., Inc.*, 545 U.S. 546, 571 (2005).  General Mills contends that this Court has

original jurisdiction over NCL's suit under CAFA because the suit is a "civil action filed under

Rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial

procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B).  According to General Mills, NCL's claim meets CAFA's three requirements for removal: (a) a combined alleged claim of more than $5,000,000, § 1332(d)(6); (b) more than 100 alleged class members in the proposed class, § 1332(d)(5)(B); and (c) diversity of citizenship, § 1332(d)(2)(A).

The Court finds instead that CAFA carves out an exception for private attorney general suits like NCL's.  *See Breakman v. AOL LLC*, 545 F. Supp. 2d 96, 101 (D.D.C. 2008).  CAFA provides that a "mass action" that meets certain requirements shall be deemed to be a removable class action, but "the term 'mass action' shall not include any civil action in which . . . all of the claims in the action are asserted on behalf of the general public (and not on behalf of individual claimants or members of a purported class) pursuant to a State statute specifically authorizing such action," 28 U.S.C. § 1332(11)(B)(ii)(3).  NCL's suit falls squarely under this exception: it is a civil action in which the sole claim is asserted on behalf of the general public pursuant to a D.C. Code provision that specifically authorizes such action.  As such, it is not a mass action removable under CAFA.

Moreover, the plain language of the CPPA expressly authorizes suits like NCL's that are brought on behalf of the general public without imposing any requirement that the suit meet the strictures of Rule 23.  *See* D.C. Code § 28-3095(k).  In *Breakman v. AOL LLC*, the court was presented with a similar motion to remand a CPPA suit to Superior Court.  Finding that the plaintiff did not attempt to comply with Superior Court Rule 23, had not sought to bring a class action, and was not bringing suit either "in his individual capacity or as a class representative in a

class action," the court held that "this representative action is authorized by District of Columbia statute and is a separate and distinct procedural vehicle from a class action."  545 F. Supp. 2d at 101.

To support its contention that NCL's suit is properly removable as a class action, General Mills argues that NCL's CPPA claim can *only* be litigated as a class action.  General Mills' Notice of Removal ¶ 12 (Although CPPA "authorizes a cause of action, that cause of action must be litigated as a class action under the applicable procedure rules" because "Superior Court Rule 23, modeled upon Federal Rule of Civil Procedure 23, is the only mechanism for bringing any class or representative action in the District of Columbia.").  General Mills brings to the Court's attention a recent opinion of the District of Columbia Superior Court, *Margolis v. U-Haul*, Case No. 2007 CA 005245 B (D.C. Super. Ct. Dec. 17, 2009), in which the court held that "Rule 23 of the Superior Court Rules of Civil Procedure is applicable to claims for money damages brought under the CPPA on behalf of third parties." *Id.* at 15.  Consequently, the court permitted the plaintiff to maintain his CPPA claim for damages in his individual capacity and for injunctive relief both in his individual capacity and as a private attorney general, but required him to comply with Rule 23 for his CPPA claims for money damages on behalf of third parties. *Id.* at 3. According to General Mills, NCL's case is therefore properly removable under CAFA because, as a suit seeking money damages on behalf of third parties, it must be brought under Rule 23.

*Margolis* is distinguishable from this case.  As an initial matter, Margolis brought his CPPA claim on his own behalf and "'in a representative capacity for similarly situated purchasers in the District of Columbia." *Id.* at 2.  The Superior Court acknowledged that a class action brought on behalf of others similarly situated differs from a representative claim brought on

behalf of the general public. *Margolis*, slip. op. at 7 (stating that "[a] claim on behalf of 'others similarly situated' is not the same as a claim made on behalf of the general public, and it therefore is not at all clear that the language of the statute regarding representative claims is applicable to the plaintiff's damages claims here."). For several reasons, the Court finds no inconsistency between the ruling of the Superior Court that a claim for money damages brought on behalf of others similarly situated must comply with Rule 23 and a determination that a private attorney general claim brought on behalf of the general public – as here – does not.

First, the aforementioned exception to CAFA draws the same distinction between cases brought on behalf of other individuals or a class of individuals as opposed to those brought on behalf of the general public. See 28 U.S.C. § 1332(11)(B)(ii)(3) (providing that "the term 'mass action' shall not include any civil action in which . . . all of the claims in the action are asserted on behalf of the general public (and not on behalf of individual claimants or members of a purported class) pursuant to a State statute specifically authorizing such action"). If a private attorney general CPPA claim is not a mass action under CAFA, it follows that a plaintiff bringing such a claim would not need to follow class action procedures. Unlike Breakman and NCL, by suing on behalf of himself and others similarly situated, Margolis essentially brought a class action suit even though he did not file it as such.

Second, the court finds significant the D.C. Court of Appeals' holding in *Grayson v, AT&T Corp.*, 980 A.2d 1137 (D.C. 2009), that a private attorney general plaintiff need not suffer an injury in fact to have standing to bring a CPPA claim on behalf of the general public. Allowing a private attorney general plaintiff to bring suit even if he has not suffered any injury does not square with the requirement of Rule 23 that "the claims or defenses of the representative

8

parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  Certainly, the

claims of a suing party who suffered no injury would never be typical of the class members'

claims.  Moreover, Grayson did not bring his CPPA suit as a class action and the Court of

Appeals made no mention of Rule 23.[1]

Third, the Court finds that one of the Superior Court's procedural due process concerns is

unfounded.  In *Margolis*, the court reasoned that unless a CPPA plaintiff seeking money

damages was required to comply with Rule 23, there was a danger of windfall to the plaintiff

given the "absent third parties."  *Id.* at 8 (finding that "plaintiff's interpretation [that compliance

with Rule 23 is not required] would permit a 'person' suing on behalf of the general public to

recover damages . . . owed to all affected 'consumers.').  Under the CPPA, however, damages are

payable to the consumer, not to the "person" who brings the claim, including a "person" acting

as a private attorney general.  *Grayson*, 980 A.2d at 1155 (finding that the Council intended,

under D.C.Code §28-3905(k)(1)(A), that any monetary remedy obtained by Mr. Grayson would

---

[1]  *Margolis* distinguished *Grayson* on the grounds that *Grayson* was a qui tam action on behalf of the District of Columbia and did not address the applicability of Rule 23 to purported representative claims for damages under the CPPA on behalf of third parties.  *Margolis*, slip op. at 14.  Grayson's claim was brought on behalf of the general public, however, not D.C.  980 A.2d at 1154 & n.72 (holding that "the 2000 Amendments to the CPPA permit Mr. Grayson to pursue his CPPA claim on behalf of himself and the general public regardless of whether he has experienced an injury in fact . . . .  Because we hold that an individual need not experience an injury to bring a claim under the CPPA, we will not address whether the CPPA also permits Mr. Grayson to bring suit on behalf of the district.").  And as a action on behalf of the general public, NCL's claim more closely resembles Grayson's than Margolis's, which was not brought on behalf of the public by a non-injured plaintiff, but rather on behalf of himself and those similarly situated.  *Margolis*, slip op. at 2.

be "'payable to the consumer.'").  There is therefore no danger of a windfall to NCL or any

private attorney general plaintiff.

Finally, the D.C. Court of Appeals remarked in *Grayson* that

[T]he 2000 Amendment instructs that the District's legislature amended the CPPA in part to "be construed and applied liberally to promote its purpose" which includes "assur[ing] that a just mechanism exists to remedy all improper trade practices and deter the continuing use of such practices[.]"  If the Council had intended for the CPPA to have a narrower reach, it would not have eliminated, with its 2000 Amendment, language which expressly limited the persons permitted to bring claims.

980 A.2d at 1155 (footnotes omitted).  To require a CPPA plaintiff to comply with Rule 23 would

not be a construction that would lead to liberal application of the CPPA to promote its purpose.

Rather, contrary to the goals of 2000 Amendment, requiring compliance with Rule 23 would

further limit the universe of plaintiffs permitted to bring claims and make it more difficult for

those plaintiffs to bring them.  Consequently, the Court finds that, at least for CPPA claims

brought on behalf of the general public as here, plaintiffs need not comply with Rule 23.

Because NCL "does not bring this action as a class action pursuant to any statute or rule,

and because it does not fall within the definition of a mass action," General Mills "cannot remove

this private attorney general suit to federal court pursuant to the Class Action Fairness Act."

*Breakman*, 545 F. Supp. 2d at 102.

## 2.   The Amount In Controversy Does Not Satisfy The Requirements For Diversity Jurisdiction.

General Mills argues that the amount in controversy in this suit "plainly exceeds $75,000,

exclusive of interest and costs" first because it sold more than 3 million boxes of Cheerios in the

fiscal year from June 2008 through May 2009 and NCL seeks statutory damages of $1,500 per

violation.  Either additionally or alternatively, General Mills urges the Court to view the value of

10

the injunctive relief sought as the cost General Mills will incur if the relief is granted.  Finally,

General Mills contends that the amount in controversy should include attorneys' fees because the

CPPA authorizes the award of attorneys' fees.  None of these theories is supported by the law in

this district.

### i.       Aggregation of Damages

General Mills argues that the amount in controversy requirement can be met by

aggregating damages, claiming that "[t]here is no question that by enacting CAFA Congress

intentionally, and explicitly, modified the rule to permit aggregation of claims in representative

actions."  General Mills' Opp'n at 19-20.  In *Breakman*, the court rejected a similar attempt by a

defendant to aggregate the consumers' damages to meet the amount in controversy.  545 F.

Supp. 2d at 103.  The court held that even after CAFA, "the doctrine [of non-aggregation] still

applies when separate and distinct claims are asserted on behalf of a number of individuals,

regardless of 'whether an action involves a simple joinder of multiple plaintiffs, [or] a

representative action' similar to the one currently before this Court."  *Id.* (citing *Snyder v. Harris*,

394 U.S. 332, 335 (1969)); *see also Reigner v. Ingersoll-Rand Co.,* 461 F. Supp. 2d 1, 1-3 (D.D.C.

2004) (holding that aggregation was not appropriate for amount in controversy analysis where

"suit seeks damages for individual consumers, not disgorgement" because "[i]t does not seek to

establish a joint or common right in a common fund").[2]  Here, NCL's claim for damages is not a

---

[2]  *See also Nat'l Org. for Women v. Mutual of Omaha Ins. Co.*, 612 F. Supp. 100, 105
(D.D.C. 1985) (finding that courts have taken "an expansive view of aggregation" in cases
involving "federal question jurisdiction when that jurisdiction still had an 'amount in
controversy' component," suggesting that "courts may well have been influenced by a desire to
provide a federal forum for the vindication of federal rights" but "[t]here is no similar reason to
view aggregation expansively when jurisdiction is based on diversity of citizenship;" and noting

common, undivided claim.  To the contrary, CPPA provides that damages in a private attorney general action are "payable to the consumer."  D.C. Code § 28-3905(k)(1)(A).  Accordingly, aggregation is not proper.

### ii. Potential Cost Of Injunctive Relief

General Mills next urges the Court to consider the potential cost of the requested injunctive relief.  This argument is also unavailing.  "To allow the defendant's view test to be used whenever injunctive relief is sought along with damages in a class action would undermine the rule against aggregation." *Nat'l Org. for Women*, 612 F. Supp. at 108 (holding that "viewing the jurisdictional amount issue from the defendant's point of view is simply another way of aggregating claims which is what the Supreme Court disallowed in *Snyder*;" reasoning that endorsing the cost-to-defendant view would allow a plaintiff with no claim for damages to satisfy the amount in controversy requirement simply by requesting injunctive relief that would cost more than $75,000); *see also Breakman*, 545 F. Supp. 2d at 105 (adopting the reasoning of *Nat'l Org. for Women*; holding that "the cost-to-defendant test is inapplicable to the current diversity action," which is "consistent with the general rule that the proper measure of the amount in controversy is from the perspective of the relief sought by the plaintiff.").

General Mills cites *Wexler v. United Air Lines*, 496 F. Supp. 2d 150, 153-54 (D.D.C. 2007), for the proposition that "[t]he value of injunctive relief for determining the amount in controversy can be calculated as the cost to the defendant."  Nevertheless, after stating that general proposition, the court in *Wexler* went on to hold that defendant United Air Lines' claim

that "this court is to construe its diversity jurisdiction narrowly" and lower courts should not broaden the narrow exceptions to the law against aggregation of damages).

that complying with an injunction would cost more than $75,000 lacked evidentiary support. *Id.* Similarly, even if viewing the amount in controversy as the cost to defendants were proper, General Mills' contention is too speculative. General Mills speculates not only about the type of injunctive relief plaintiff will seek, but how much that relief would cost. Notice of Removal ¶ 15(b) ("NCL does not specify the injunctive relief that it seeks, but to the extent that relief requires the removal of boxes of store shelves, the expense to General Mills would exceed $75,000.").

### iii.  Potential Amount of Attorneys' Fees and Costs

Finally, General Mills argues that because CPPA would permit NCL to recover attorneys' fees and costs if it were to prevail, the Court should find that the amount in controversy is met. General Mills' estimates that "[u]sing a conservative estimate of $250 per hour of attorney time, Plaintiff's attorneys only need to record 300 hours to this matter to reach $75,000 in controversy . . ." Notice of Removal ¶ 15(d). As the court held in *Breakman*, this argument misfires for several reasons. First, this kind of conclusory guesswork about potential attorneys' fees is too speculative. *Breakman*, 545 F. Supp. 2d at 107 ("Numerous courts have held that a 'defendant's conjecture regarding the possible amount of fees is inadequate to support an assertion of diversity jurisdiction.'") (citing cases).

Second, like aggregation of damages, aggregation of attorneys' fees is not appropriate in a CPPA case. *See Breakman*, 545 F. Supp. 2d at 107 (holding that "[b]ecause this Court strictly construes the scope of its removal jurisdiction, and because the non-aggregation principle logically should extend to claims of attorneys' fees . . . attorneys' fees should be apportioned

among all of the consumer plaintiffs"); *Nat'l Org. for Women*, 612 F. Supp. at 109

("conclud[ing] that the amount of requested attorneys' fees cannot be aggregated for determining

the jurisdictional amount").

Finally, as a policy matter, it is the Court's view that allowing attorneys' fees to satisfy the

amount of controversy could encourage defendants to remove cases improperly simply to

increase plaintiffs' fees and costs and thereby support removal. *See Breakman*, 545 F. Supp. 2d

at 107 (stating that "the Court is not entirely comfortable with the premise that an action should

be retained in federal court where satisfaction of the amount in controversy requirement depends

upon a lump sum award of attorneys' fees."); *Srour v. Barnes*, 670 F. Supp. 18, 22 (D.D.C. 1987)

(finding that "as a policy matter, allowing attorney fees to constitute the matter in controversy

would hinge federal jurisdiction on the fee schedules of lawyers instead of the weight of the

substantive issue before the court.").

Because NCL's claim does not meet the amount in controversy requirement, the Court

does not have diversity jurisdiction.

**C.     The Award of Attorneys' Fees and Costs Is Not Appropriate**

Under 28 U.S.C. § 1447(c), a district court "may require payment of just costs and any

actual expenses including attorney fees, incurred as a result of the removal." The Supreme Court

has held that "absent unusual circumstances, attorney's fees should not be awarded when the

removing party has an objectively reasonable basis for removal." *Martin v. Franklin Capital

Corp.*, 546 U.S. 132, 136 (2005). Where non-removability is obvious or contrary to well-settled

law, courts regularly award costs and expenses incurred as a result of the removal. *Knop v.*

*Mackall*, 640 F. Supp. 2d 58, 62 (D.D.C. 2009); *Johnson-Brown v. 2200 M. St. LLC*, 257 F. Supp. 2d 175, 181 (D.D.C. 2003) (citing *Garcia v. Amfels, Inc.*, 254 F.3d 585, 588 (5th Cir. 2001)).

General Mills' contention that NCL has organizational standing and subject matter jurisdiction are contrary to other decisions in this district, but there is no D.C. Circuit law foreclosing its arguments. *See Breakman,* 545 F. Supp. 2d at 108 (declining to award attorneys fees and costs because as AOL argued "'there is no clear, controlling case law' from the D.C. Circuit, which explains how a representative action under the DCCPPA should be treated for purposes of 28 U.S.C. § 1332."). Because General Mills' removal of this action was not contrary to well-settled law or binding authority, the award of fees and costs to NCL is not appropriate.

## III. CONCLUSION

For the foregoing reasons, the Court concludes that NCL's Emergency Motion to Remand [#16] should be granted. An appropriate order accompanies this memorandum.


January 15, 2010                                          Henry H. Kennedy, Jr.
                                                         United States District Judge